## MARVIN B. LYON ET AL. V. MARY LYON ET AL.

1. ORDINANCE OF 1787 IN FORCE.

    That part of the ordinance of 1787 not repealed by the constitution or statutes, in express words or by fair implication, is still in force in this state.

2. "NEXT OF KIN," AS USED IN SEC. 4159 REV. STAT., SIXTH PARAGRAPH, EXCLUDES THE HALF BLOOD.

    The sixth paragraph of Sec. 4159 Rev. Stat., which provides that an estate acquired by purchase, in default of certain heirs, shall pass to the next of kin, is controlled by the third and fourth paragraphs of such section, and kindred of the whole blood of the intestate will take as next of kin under such paragraph to the exclusion of those of the half blood.

Harlan & Wood, for plaintiffs and defendants, Mary Lyon et al., cited:

The words "next of kin" describe a class of persons to be ascertained by the rules of law and the degrees of consanguinity are to be computed according to the rules of the civil law. Clayton v. Drake, 17 Ohio St. 367, 368.

Brothers of the whole and half blood are of the same degree, and would share equally unless distinction is made by statute. Cliver v. Sanders, 8 Ohio St. 501, 506.

Under the ordinance of the northwest territory no distinction is made between the whole and half blood, and the next of kin share in equal degrees and alike. Ordinance of 1787 at page 3646 Bates Rev. Stat.

All laws of the northwest territory not inconsistent with the constitution of the state continue and remain in full force until repealed by the legislature of the state. Constitution of 1802, Sec. 4, Art. 8, of schedule; constitution of 1851, Sec. 1, Art. 10, of schedule; Cass v. Dillon, 2 Ohio St. 607.

It has been said that the policy of our statutes prefers the whole to the half blood. This may be true, but when the statute is silent on the subject, courts have no power to enlarge on the same and hold that the whole blood is preferred to the half blood by implication, when the plain terms of the statute is to the contrary. Clayton v. Drake, 17 Ohio St. 367, 373.

L. K. Powell, for defendants, Franklin P. French et al., cited:

"Next of kin" under Sec. 4158 Rev. Stat., may not be "next of kin" under Sec. 4159 Rev. Stat., depending on the rules by which "next of kin" are ascertained. The result of this would be that the "next of

kin" of Andrew of the blood of Emeline, under Sec. 4153 Rev. Stat., would include different persons from the "next of kin" of Andrew under Sec. 4159 Rev. Stat.

The rules of the civil law are abrogated as to ancestral property, when it passes in the ascending line from the intestate, as uncles are preferred to grandparents. Curren v. Taylor, 19 Ohio 36.

The distinction between the inheritable qualities of the whole and the half blood prevails throughout the entire Sec. 4159. Stembel v. Martin, 50 Ohio St. 496 [35 N. E. Rep. 208].

I would suggest the following authorities as throwing light on the subject: Brewster v. Benedict, 14 Ohio 385; Prickett v. Parker, 3 Ohio St. 394, 396; Cliver v. Sanders, 8 Ohio St. 501; Clayton v. Drake, 17 Ohio St. 367.

## DONAHUE, J.

This is an action brought to partition certain real estate of which Andrew L. French died seized and intestate. The agreements of counsel are that eighty acres of this land were inherited by Andrew L. French from his father, Lucius French; that seven and one-half acres were inherited by him from his mother, Sener French; that eighty-seven and one-half acres were inherited by him from his sister, Emeline French; that two hundred and fifty acres were acquired by purchase.

It is further agreed that the eighty acres inherited from the father, goes to the next of kin of the blood of the father; that the seven and one-half acres inherited from the mother goes to the next of kin of the blood of the mother, whether they be of the whole or half blood. It is also further agreed that the eighty-seven and one-half acres inherited from the sister goes to the next of kin of the blood of Emeline, as claimed in the petition and in the proportions therein stated.

The question submitted to us is, as to the descent of the title to the two hundred and fifty acres; and in reference to this, it is further conceded that this estate passes under paragraph six of Sec. 4159 Rev. Stat., and the sole and only question for us to determine is, who are the next of kin under this paragraph of the statute.

It is contended, on the one hand, that children of the brother of the whole blood of the father take to the exclusion of children of the brothers of the half-blood of the mother. On the other side, it is contended that children of brothers of the half-blood of the mother take in equal proportion to children of the brother of the whole blood of the father. This is the sole question submitted to us for consideration. The fact that one set of heirs claim through the mother, the other through the father has nothing to do with the question. It is the same as if the

children of the brother of the whole blood of the father and the children of the brothers of the half-blood of the father were claiming this inheritance.; so then the question is fairly presented as to whether under paragraph six of Sec. 4159 Rev. Stat., the whole blood is preferred to the half-blood. Counsel have very fully and fairly presented this question to us and aided us largely in our investigation.

To determine this question, we must look not only to the legislation but also to the history of descent, both under the common law or canons of descent and the civil law, for one of these will obtain unless the statute in express words, or by fair implication, abrogates both and gives a new rule for determining the next of kin.

The common law and the civil law agreed in rules of descent to lineal heirs in the descending lines, but when the descending lines were exhausted, then the common and civil law parted company.

The common law, to meet the needs and purposes and intention of the feudal system, then sought next of kin among collateral kinsmen upon the theory that the inheritance should rest in a younger and stronger individual more capable of service to his feudal lord than would be the aged ancestor in the lineal ascending lines; therefore the kinship was reckoned from the intestate directly in collateral lines; and the natural and necessary result was to exclude the half-blood when there were brothers of the whole blood, because the whole blood were necessarily nearer of kin to the intestate than the half-blood.

The civil law reckoned on lineal lines only, going back to a common ancestor and then down to his nearest kinsman, so that if the half-blood and whole blood were all children of that ancestor, they stood in equal relation to the ancestor; and as the inheritance came not direct from the intestate but through the ancestor, only the kinship to the ancestor was important and the natural result of this rule was to make the whole and half-blood equal in the line of succession. Therefore, it is apparent that if the civil law obtains here the whole and half-blood stand equal. If the common law, the whole blood takes to the exclusion of the half-blood.

Section 2 of the ordinance of 1787, provides:

"That the estates both of resident and non-resident proprietors in the said territory, dying intestate, shall descend to, and be distributed among, their children and the descendants of a deceased child in equal parts, the descendants of a deceased child or grandchild to take the share of their deceased parent in equal parts among them; and where there shall be no children or descendants, then in equal parts to the next of kin, in equal degree; and among collaterals, the children of a deceased brother or sister of the intestate shall have, in equal parts

Lyon v. Lyon.

among them, their deceased parent's share; and there shall in no case, be a distinction between kindred of the whole and half-blood."

That was the first legislation that affected real estate in this state upon the question of descent. The constitution, or I should say, both constitutions of Ohio left this law in force.

The constitution of 1802, Sec. 4 of the schedule reads:

"All laws, and parts of laws, now in force in this territory, not inconsistent with this constitution, shall continue and remain in full effect, until repealed by the legislature, except so much of the act, entitled 'an act regulating the admission and practice of attorneys and counsellors at law,' and of the act made amendatory thereto, as relates to the term of time which the applicant shall have studied law, his residence within the territory, and the term of time which he shall have practiced as an attorney at law, before he can be admitted to the degree of a counsellor at law."

Turning to Sec. 1 of the schedule of the constitution of 1851:

"All laws of this state, in force on the first day of September one thousand eight hundred and fifty-one, not inconsistent with this constitution, shall continue in force until amended, or repealed."

So that unless the statute does amend or repeal, or in some way change the course of descent, this part of the ordinance of 1787 is still in force; and the whole and half-blood stand equal, as by the rule of the civil law.

Our next inquiry is, as to whether this rule is changed by statute. We have in this Sec. 4159 Rev. Stat., what is known as the statute of descent of non-ancestral estates. That provides:

"First. To the children of the intestate and their legal representatives.

"Second. If there are no children, or their legal representatives, the estate shall pass to and be vested in the husband or wife, relict of such intestate.

"Third. If such intestate leaves no husband or wife, relict to himself or herself, the estate shall pass to the brothers and sisters of the intestate of the whole blood, and their legal representatives.

"Fourth. If there are no brothers or sisters of the intestate of the whole blood, or their legal representatives, the estate shall pass to the brothers and sisters of the half-blood, and their legal representatives."

It is evident, so far as the classes named in the third and fourth paragraphs of this section are concerned, the ordinance of 1787 is repealed. This, in effect, excludes the half-blood, and gives the estate to the whole blood, to the exclusion of the half-blood.

The sixth provision of this statute is as follows:

"If the father and mother are dead, the estate shall pass to the next of kin, and their legal representatives, to and of the blood of the intestate."

The question arises, whether the third and fourth paragraphs of this section control the sixth, or whether the sixth paragraph of this section stands alone and unaffected by the provisions of the third and fourth.

The case of Stembel v. Martin, 50 Ohio St., p. 495, gives us some advice as to the opinion of the Supreme Court upon this question. It does not construe this statute, but it construes Sec. 4162 Rev. Stat., and that provides for the descent of the estate after the death of the husband or wife, where the survivor has not disposed of the estate during his lifetime.

The Supreme Court, in disposing of this section, say this is not an independent section as it appears from the revised statutes of Ohio, but that it is a supplemental section to this other section of descent and distribution; and that it is controlled by the rules laid down in those sections, that the only effect of the supplemental section, is to divide the estate and send it back to be distributed under the rules given in the section just referred to.

We cannot understand why, if this supplemental section is controlled by the provisions of the third and fourth paragraphs of this section first referred to, the paragraph of the same section should not so be controlled.

It seems to us the conclusion is irresistible, that if the Supreme Court hold a supplemental section is controlled by paragraphs three and four, it must also hold that the sixth paragraph of the same section is controlled thereby.

There is an instructive case in Curren v. Taylor, 19 Ohio 36, 39. In discussing this the court say:

"The argument is pressed with earnestness, that the civil law should govern, and not the common law, in determining who is the next of kin intended in this clause, and that in accordance with the better feelings of our nature, the grandfather is regarded as a nearer relative than uncles or aunts.

"It has been the settled policy of the state, in its laws of descent, to direct the property of a deceased brother to pass to the brothers and sisters who survive him, to hold them in this respect, as nearer than the father, or at all events, to prefer them to the father, even in a case where all the property had come by gift directly from him. If George Arter, the son, had died without a child, the estate now in controversy, would, under the statute we are now considering, have passed to his

Lyon v. Lyon.

brothers and sisters, and not to his father.  Now it is difficult to understand why this law should be suffered to remain in force here, where statutes are so easily, and in point of fact, so frequently subjected to alteration and repeal, if there be in reality any general sentiment or feeling opposed to this principle of descent.  In putting a construction upon the statute or upon parts of it, we, as a court, at least, would feel ourselves called upon to give some attention to the principle so recognized in the law of descents.  If, then, this estate would have been properly settled upon the brothers and sisters of George Arter, senior, had he died without children, we cannot see a sufficient reason for diverting it from that course, because it has chanced to rest for a time in his infant son.  We think that by a proper interpretation of the statute in question, the brothers and sisters of the intestate's father, and not the grandfather, should take the inheritance."

So we think that the rule of descent fixed by our statutes and the whole tendency of legislation upon that subject, is to exclude the half-blood and to give the estate to the whole blood.

Suppose, for instance, to show the analogy between this case I just read from and the case at bar:  That this father had the property, that he died seized of this property, not the son, Andrew L., but Lucius died seized of this property, and he failed for heirs in the lineal line.  The statutes would not send it back to the father, but it would send it to his brothers of the whole blood.  If the father had died seized, then the statutes of the state would send it to his brothers of the whole blood.

It is further said in the case of Curren v. Taylor, *supra:*

"There is no theory, no reason for saying, that because the child held for awhile, that it should go through any different course of descent than the one it naturally had followed had the child never been born and lived to inherit through the father."

We think there's a direct parallel between that case and the one we have here.  We think the statutes of descent in Ohio intend to give to the whole blood to the exclusion of the half-blood in cases of this kind.  We think that if this estate came back to this father or to the mother, and the father or mother held for ever so short a time, if they lived just long enough to arrest the title in themselves after the death of the son, it would have gone to the brothers of the whole blood, and there is no reason it should not go to the same heirs that it would have gone to if they had lived long enough to arrest the title.

That being our conclusion, the heirs of the half-blood will be excluded from the 250 acres, and as to the other land sought to be partitioned a decree may be entered according to the agreement of counsel.